*1040 OPINION OF THE COURT
Lee Cross, J.
On May 10, 1993, the defendant was arraigned on a charge of sexual abuse in the second degree (Penal Law § 130.60), arising out of an incident where an eyewitness claimed to have seen defendant touch the genitals of a 21-year-old mentally retarded man, over the man’s pants. On July 6, on the People’s motion and with the consent of the defendant and of the court, the case was adjourned in contemplation of dismissal. On July 27, the People moved to restore the case to the calendar. That motion is denied.
The defendant is a 71-year-old man with no criminal record. The People’s initial complaint was so poorly worded that on the first date the case appeared on the AP9 calendar, May 27, both the court and the Assistant District Attorney mistakenly believed that the eyewitness, who was named in the complaint, was actually the victim of the alleged touching. Defense counsel insisted that the person touched was not the person named in the complaint. After reading through the entire file, the Assistant finally determined that the person named in the complaint was only an eyewitness and that the alleged victim’s name had been omitted.* The court ordered the People to prepare a new complaint properly charging the defendant with the crime they wished to allege.
On June 17, the People still had not drafted a proper complaint. They were directed by the court to speak to the eyewitness to verify whether any innocuous behavior on the part of the defendant could have been misinterpreted as something more sinister. Such direction was given in light of *1041 defense counsel’s contention that the eyewitness was located some distance away from the alleged incident and in view of the fact that the alleged touching had occurred on the outside of the victim’s pants.
On July 6, the People still had not drafted a proper complaint. Instead, they offered an adjournment in contemplation of dismissal with an order of protection. The defense agreed. In the court’s opinion this seemed to be an appropriate disposition given the defendant’s age, lack of prior record, and the difficulties the People were having in drafting an appropriate complaint. The case was then ACDed with a full order of protection.
In moving to restore the case to the calendar the People do not claim any violation of the order of protection. They claim, instead, that the case was erroneously ACDed because an inexperienced Assistant mistakenly believed that there were no eyewitnesses to the crime and that the case could not be proven given the victim’s inability to testify. Additionally, the People argue that it would not be in the interests of justice to dismiss this case, because eight years ago, the defendant allegedly asked the victim to touch his genitals. The victim reported the incident to his mother, but the police were never called and there were apparently no eyewitnesses.
It is important to note that the main premise relied on by the People as a grounds for restoring this case — namely that the Assistant erroneously believed that there was no eyewitness — is not true. Throughout this case, everyone knew that there was an eyewitness and everyone knew that the complainant would be incompetent to testify given his mental limitations.
Prior to 1980, CPL 170.55 required a court to restore a case whenever the People so requested, even absent an articulated legitimate reason for doing so. Thus, in People v Dibono (82 Misc 2d 177 [Crim Ct, NY County 1975, Milonas, J.]) — a case which was ACDed on the stipulation that the defendant participate in a program and make full restitution — the Judge held that the case had to be restored at the People’s request despite the defendant’s fulfillment of all of the required conditions. The Judge went on, however, to dismiss the case in the interests of justice, because the defendant had completed the program, made full restitution, and had not been rearrested.
CPL 170.55 was amended in 1980 to remove the People’s unfettered right to have a case restored to the calendar. *1042 Adopting the wisdom of the Dibono decision (supra), the Legislature introduced the concept of a dismissal in the interests of justice to the restoration of a case previously ACDed. Now a court may restore a case to the calendar only if it finds that "dismissal of the accusatory instrument would not be in furtherance of justice”. However, it is important to note, as the Bellacosa Practice Commentary points out, the "fulcrum” between an ACD restoration and a dismissal in the interests of justice is different. (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A [1982], CPL 170.55, at 93.) In a true Clayton motion (People v Clayton, 41 AD2d 204 [2d Dept 1973]), the burden is on the defendant to persuade the court that the interests of justice require a dismissal. In contrast, when the People seek restoration of a previously ACDed case, they must affirmatively bear the burden of convincing the court that the interests of justice require that the case not be dismissed. A Clayton dismissal in the interests of justice is reserved for that rare case where some "compelling factor, consideration or circumstance” clearly demonstrates that the prosecution of the defendant "would constitute or result in injustice”. (CPL 170.40 [1].) In most cases where an ACD is given, a Clayton dismissal would not have been granted had that been the remedy initially sought. Once a case has already been ACDed, however, the People are required to prove the existence of some compelling factor before such a case will be restored to the calendar.
Each week in Kings County, dozens of previously ACDed cases are restored to the calendar without a word of complaint from the defense. These are cases where an ACD was granted on the condition that the defendant do community service, pay restitution, or abide by an order of protection and the defendant has failed to do so. It truly would not be in the interests of justice to dismiss a case when a defendant has not abided by the conditions upon which the ACD was granted.
Are there any cases, however, where restoration is warranted even though the defendant has not violated any underlying condition of the ACD? This court has found only two decisions on point. In People v Clark (120 Misc 2d 365 [Crim Ct, Kings County 1983]), restoration was ordered because the defendant had procured an ACD by providing phony documents to the People. A dismissal procured by fraud is obviously not in the interests of justice. But, in People v Clark (123 Misc 2d 674 [Crim Ct, NY County 1984]), the court refused to restore a case where the proffered reason for the restoration *1043 was that the defendant had civilly sued the complainant in the criminal case. The court noted that there was a serious question as to whether the People could legitimately condition a dismissal on a defendant’s agreement to forego civil litigation. Even assuming the permissibility of such a condition, the court noted that a criminal trial engaged in for the sole purpose of affecting the outcome of a civil suit was not a wise use of the limited resources of the Criminal Court.
In the instant case, the only reason proffered for restoration is that the Assistant who offered the ACD was inexperienced and should not have made the offer. Such an argument is suspect given the fact that the Assistant’s supervisors knew of the ACD as soon as it was entered, but failed to move to restore the case for 21 days. A more plausible scenario is that the decision to move to restore was made after the parents of the complainant were told of the ACD and voiced their objections thereto. Whatever the true reasons are for this motion, restoration because the People have had a change of heart is not appropriate. The defendant did not fraudulently induce this ACD and has lived up to all of its conditions. Furthermore, there was no serious misunderstanding between the People and the court as to the facts of this case at the time the ACD was granted. Restoration is particularly inappropriate in the case at hand given the age of the defendant, his lack of a prior criminal record, and the fact that he has gone through the process of being arrested and charged and is still subject to an order of protection until January 5, 1994. Accordingly, the case remains adjourned in contemplation of dismissal.

 Since the passage of Civil Rights Law § 50-b, requiring that the names of victims of sexual assault not be made public, the District Attorney’s office has often omitted the names of complainants from complaints. This stems from a misreading of the law and causes untold problems. The law requires court personnel not to make the name public. If a newspaper reporter wants to read a complaint involving a sex crime, the court personnel must redact the name of the victim before making the complaint public. But it does not require the District Attorney to omit the name from the charging documents. When the name is omitted, who should an order of protection be made in favor of? When the name is omitted, how can a complaint be corroborated when the corroborating affidavit of the victim is necessary? Once an order of protection or a corroborating affidavit is filed, the name of the complainant appears in the court papers even if it is omitted from the complaint. The wiser course would be for the District Attorney’s office to draft the complaint like any other complaint and to rely on court personnel to carry out the dictates of Civil Rights Law § 50-b.